KEMPNER v. SILVER LAKE LAND & CAT-
TLE CO.   (No. 6215.)

(Court of Civil Appeals of Texas.   San Anto-
nio.   May 7, 1919.)

**1. BOUNDARIES** ⬤⟿**8 — SURVEY—ABANDONED
LINES.**

Surveyors often run preliminary lines that
become of no locative value, but merely indicate
the work on the ground unless written in and
made part of the field notes, and in a boundary
case no attention need be taken of the action
of a surveyor in running a line which he aban-
doned as soon as he encountered difficulties.

**2. BOUNDARIES** ⬤⟿**25 — CONFLICTS — SENIOR
SURVEY.**

Where there are conflicts between a senior
and junior survey, the conflict is resolved in
favor of the senior survey.

**3. BOUNDARIES** ⬤⟿**46(3) — ACTIONS — AGREE-
MENTS.**

In trespass to try title, an agreement as to
the parties' ownership of different surveys *held*
not to amount to an agreement by plaintiff that
no part of the land sued on was embraced
within the boundary of one of his surveys,
which was senior to that of defendant.

Appeal from District Court, Kinney Coun-
ty; Joseph Jones, Judge.

Action of trespass to try title by the Silver
Lake Land & Cattle Company against Eliza
Kempner.   From a judgment for plaintiff,
defendant appeals.   Judgment reformed.

H. E. Veltmann, of Brackettville, and
Walter Gillis, of Del Rio, for appellant.

Frank Lane, of Brackettville, and Solon
Stewart, of San Antonio, for appellee.

COBBS, J.   Appellee instituted this suit
in trespass to try title to recover the follow-
ing described land:

Beginning at a rock mound, the northeast
corner of survey No. 10, Wm. Gannon, and
southeast corner of survey No. 31, S. I. & A.
Co., from which a cedar, 8 inches, bears N.
76½° W. 38 varas, a live oak, 5 inches, bears
N. 73½° W. 31⅞ varas, and a live oak, 6
inches, bears S. 39½° W. 28⅜ varas, which
said northeast corner of said survey No. 10
and southeast corner of said survey No. 31
is on the line of a rock fence on the west
line of survey No. 9, patented to Hugh Gor-
man, distant S. 20° W. 586 varas from the
north corner of said survey No. 9, and 1,314
varas N. 20° E. from the southeast corner
of said survey No. 10, Wm. Gannon, and
southwest corner of said survey 9, Hugh
Gorman; thence N. 20° E. with the east
(southeast) line of said survey 31, crossing
Sycamore creek, to a stake and mound, the
most western corner of survey No. 545, pat-
ented to Garrett & Co., assignees of G., C.

& S. F. Ry. Co., in the southeast boundary
line of said survey 31, from which a live oak,
5 inches, bears N. 60° E. 15 varas, ditto, 5
inches, bears N. 60° E. 16 varas, as called
for in the patent and as located by Surveyor
Joseph Jones; and thence in the same course
with said east (southeast) line of said sur-
vey 31, N. 20° E. crossing said Sycamore
creek again at 840 varas, again at 1,550
varas, at 1,660 varas foot of bluff, 1,947
varas a rock mound; thence S. 60° E. 340
varas to a rock mound on the east side of a
drain; thence S. 30° W. 1,920 varas to the
place of beginning.

· The defendant answered by plea of not
guilty.

Appellant concedes in his brief that this
is a boundary suit dependent upon the true
location upon the ground of the southeast
boundary line of original survey 31 in the
name of Wm. Gannon, assignee of S. I. & A.
Co.

The judgment was for the appellee for the
land sued for and establishing the boundary
line.   Both parties requested the court for
his findings of facts and conclusions of law,
which were granted and furnished.   There
was likewise filed a statement of facts.   The
findings of the court and his conclusions of
law, which have been sharply challenged by
appellant, are as follows:

### "Findings of Fact.

"(1) That plaintiff has title to all of surveys
Nos. 9 and 545, and defendant has title to all
of survey No. 31 in Kinney county, Tex., which
said surveys, with adjoining and surrounding
surveys are shown on the blueprint map here-
to attached and marked Exhibit A.

"(2) That the only question involved in the
suit is one of boundary, and its correct deci-
sion depends entirely upon the true location
of the southeast boundary line of said survey
No. 31.   Whatever part, if any, of the land de-
scribed in plaintiff's petition that is situated
east of said line is owned by plaintiff; and
whatever part, if any, of said land that is situ-
ated west of said line is owned by defendant.

"(3) That said survey No. 31, for 640 acres,
was originally located and surveyed for Wm.
Gannon, assignee of the S. I. & A. Co., by H.
C. Petty, county surveyor of Kinney county,
Tex., on April 17, 1877, and is described in the
original field notes returned by him to the gen-
eral land office as follows, to wit:   'Beginning
at the N. E. cor. of Pre. Sur. No. 10 in name
of Wm. Gannon, which is the S. E. cor. of this
Sur.; thence N. 70° W. 1,900 vrs. to a stone
md., a cedar 8 ins. brs. N. 25° W. 63 vrs.;
another 8 ins. brs. N. 16° W. 60 vrs.; thence
N. 20° E. 1,063 vrs. to a prong, known as Syca-
more, crossed creek, 1,900 vrs. to a mound of
stones, a persimmon 4 ins. brs. N. 70° E.
5⅜ vrs., a cedar 6 ins. brs. S. 70° W.; thence
S. 70° E. 1,900 vrs. to a mound of stones on
side of mountain; thence S. 20° W. 1,500 vrs.
to creek, crossed creek, 1,900 vrs. to beginning'
—and that said survey No. 31 was patented by
the state of Texas to said Wm. Gannon July

30, 1879, and was described in the patent by the field notes above set out.

"(4) That in surveying said survey No. 31 said Petty began at the northeast corner of survey 10 for the southeast corner of said survey· 31, the same being a stone mound, and still in place, and identified by the testimony in this case, with the intention of first running the southeast line of said survey, and ran from said corner N. 20° E., crossing the Sycamore creek once to the east bank of said creek, where he marked some live oak trees for the purpose of identifying and fixing the point on said line that he had actually reached; that, encountering dense brush, he did not continue on the course started by him, but returned to the beginning corner, and, beginning there, again ran N. 60° W. 1,900 varas, and established the southwest corner of the survey; thence N. 30° E. 1,900 varas, and established the northwest corner of the survey; thence S. 60° E. 1,900 varas, and established the northeast corner of the survey; that he stopped at said northeast corner and did not actually run the southeast line of said survey from that point to the beginning or southeast corner of same, nor to the point on the east bank of the Sycamore creek where he had marked the live oak trees at the end of the first line run by him and which was run on the course N. 20° E. from the beginning corner of the survey; but that, having established the northeast corner of said survey, he merely called for the southeast line of said survey to run 'thence S. 20° W. 1,500 vrs. to creek, crossed creek, 1,900 vrs. to beginning.'

"(5) That the original southeast, southwest, northwest, and northeast corners of said survey 31 as actually marked on the ground by Petty, and as described in the field notes, have been found and identified on the ground, and are still in place; that the point on the east bank of the Sycamore creek where he marked the live oak trees at the end of the first line run by him on the course N. 20° E. from the beginning corner of the survey, and when he started to run the southeast line of said survey, can be identified and fixed upon the ground by its course from the southeast corner of said survey and by its location on the east bank of the Sycamore creek, though the distance of said point from the beginning or southeast corner of said survey 31 is not definitely shown.

"(6) That it was the intention of Petty to lay off said survey 31 in the form of a square, and that in running the southwest, northwest, and northeast lines of same, and in his call for the course of the southeast line of same, he believed at the time that all of said lines corresponded with the courses for same called for in the field notes, but, through some error on his part, not explained, said southwest, northwest, and northeast lines of said survey as actually run by him follow the courses described for same, respectively, in paragraph 4 hereof, and that said Petty also believed and intended at the time he called for the southeast line of said survey to run from the northeast corner of same S. 20° W. 1,900 varas to its southeast corner; that it would connect and coincide with and follow the same course as the line he had run from the southeast corner of same on the course N. 20° E. crossing Sycamore creek to the point on the east bank of same where he had marked the live oak trees.

"Conclusions of Law.

"(1) That the true and correct southeastern boundary line of said survey No. 31 is as follows, to wit: Beginning at the southeast corner of said survey 31, the same being also the northeast corner of survey 10; thence N. 20° E., crossing Sycamore creek, to the east bank of same, being the point where Petty stopped and marked the live oak trees when he started to run the southeast line of said survey, and being also the most western corner of survey No. 545, as established by Jos. Jones; thence from said point in a straight line to the original northeast corner of said survey 31, established by said Petty.

"(2) That plaintiff has title to all of the land described in its petition that is situated east of said boundary line above described, and that defendant has title to all of said land that is situated west of said line."

The true location was established by beginning at a rock mound, the northeast corner of survey No. 10 in the Wm. Gannon, which is northeast corner of survey 10, which is on the line of a rock fence on the west line of survey No. 9, patented to Hugh Gorman, distant S. 20° W. 586 varas from the north corner of said survey No. 9, and 1,314 varas N. 20° E. from the southeast corner of said survey No. 10, Wm. Gannon, and southwest corner of said survey No. 9, Hugh Gorman. Here the southeast corner of survey No. 31, S. I. & A. Co., was found and established as the beginning. It was a common corner and well identified by the surveyors. Bearing in mind that the surveyor was locating a square survey of 640 acres whose four lines would be 1,900 varas each in length and having run three of those lines to form a square or a section of 640 acres, it was the intention of the surveyor to make the fourth line the same distance and to so project this fourth line as to close at the place of beginning, which would be practically a straight line to the beginning corner.

[1] The court found in surveying No. 31 that Petty, a surveyor, began at northeast corner of survey No. 10 for the southeast corner of said survey No 31, the same being a stone mound, and still in place and identified by the testimony in this case, with the intention of first running the southeast line of said survey, and ran from said corner N. 20° E., crossing the Sycamore creek once to the east bank of said creek, where he marked some live oak trees for the purpose of identifying and fixing the point on said· line that he actually reached; that, encountering dense brush, he did not continue on the course started by him, but. returning· to the beginning corner and beginning there again, ran N. 60° W. 1,900 varas and established the southwest corner of the survey, and thence on around, establishing on the ground the other two corners. No attention need be taken of the action of the surveyor in any surveying done there, which he left as soon as he encountered obstacles that might have

seriously affected his work, which he thereby abandoned and took no further note of, and surveyed the other three lines without difficulty. Surveyors often run preliminary lines that become of no locative value, but merely to indicate his footsteps in doing work on the ground, unless written in and made a part of the field notes for identification. The significance here of value is that he was on the ground running lines and located and identified this important common corner, and thus put in a correct location and survey of No. 31.

[2, 3] The trial court established the east line of survey No. 31 in accordance with the lines run on different courses connecting with each other on the east bank of the Sycamore creek, and adjudged that part of the land sued for that is situated east of such line described by field notes to the appellee; while all that part of the same that is situated west of said lines was adjudged to the appellants. This was error and in conflict with our opinion. All the land lying east of said line and to the line running N. 30° E. from the northeast corner of survey No. 10, the true boundary line, is embraced within the boundaries of No. 31.

A part of the land awarded to appellee, however, is admittedly located within the boundaries of survey No. 9, which is a senior survey to No. 31. The conflict thus existing must be resolved in favor of survey No. 9, and appellee should recover to that extent. There is, however, an agreement in the record which has caused us much trouble in this connection. In one part of the agreement it is stated that the land in controversy is included within the original field notes of survey No. 545, from which it might be inferred that none of it is situated within the boundaries of survey No. 9. Again, however, it is stated that plaintiff has title to No. 9 and to No. 545, except such portion thereof as may be embraced within the boundaries of survey No. 31, and that defendant has title to No. 31. This indicates that appellee relied upon his ownership of No. 9, and had no intention of agreeing that no part of the land sued for was embraced in the boundaries of such survey.

We have concluded that a fair construction of the agreement is that appellee has title to surveys Nos. 9 and 545 and appellant to No. 31, and that the only thing remaining to be determined is to locate the east (or southeast) line of No. 31, and then declare the legal effect of such location upon the claims of the respective parties.

The result, therefore, is that the judgment in favor of appellee should be modified so as to award it a recovery only of all that part of the land in controversy situated within the boundaries of survey No. 9, and that as to the remainder of the land sued for, appellee take nothing by its suit; the land so awarded to appellee being bounded as follows: Beginning at the northeast corner of survey No. 10, grantee, Wm. Gannon; thence N. 20° E. with original west line of No. 9, grantee, Hugh Gorman, to the original north corner of said survey No. 9; thence in a southeasterly direction with the original east line of said survey No. 9 to the point at which it intersects a line run N. 30° E. from the said original northeast corner of said survey No. 10; thence S. 30° W. to said original northeast corner of said survey No. 10, the place of beginning.

We are not unmindful of the fact that this description leaves open the way for further controversy, because it does not locate the north corner of No. 9 by any bearing trees now existing on the ground, but this is unavoidable, as no effort was made to show upon the trial where such corner was actually placed by the original surveyor.

The judgment of the trial court will be reformed as above indicated. The costs of appeal will be taxed against appellee. Rehearing granted. The judgment heretofore rendered by this court is set aside, and judgment entered as aforesaid, and the original opinion withdrawn, and this is substituted in lieu thereof as the opinion of the court.